P. J. & R. S. WILLIS v. CYNTHIA JOHNSON ET AL.

1. The consideration, which must be alleged and proven, to support the plea of innocent purchaser, must be valuable and legal.

2. The defense of innocent purchaser for valuable consideration cannot be sustained when the consideration paid was Confederate notes or bills.

APPEAL from Montgomery. Tried below before the Hon. James Masterson.

The appellees brought suit on a promissory note executed by John R. Cook to Bede Johnson, for $4300, alleging ownership, and that the note was in part consideration for certain lands, described in the petition; that the lands were by Cook sold to appellants, and that they had notice of the lien upon the land.

The defendant pleaded general denial, and *bona fide* purchase, without notice.

The verdict of the jury was as follows:

"We, the jury, find for plaintiffs, against J. R. Good, the sum of five thousand eight hundred and seventy-

seven and $\frac{70}{100}$ dollars, principal and interest on the note sued on, given for purchase of the land mentioned in plaintiff's petition; and find that the defendants, P. J. Willis & Bro., bought the land without notice of the vendor's lien; but the payment by said Willis & Bro. to J. R. Cook being Confederate money, find said land liable for amount of judgment against J. R. Cook."

Judgment for plaintiff's, and foreclosing vendor's lien against appellants.

*N. Hart Davis*, for appellants.—Appellants did and do maintain, that they were and are entitled to a judgment and decree in their favor on the verdict of the jury.

These appellants are brought into equity by plaintiffs (appellees) to contest and defend a charge sufficient (if true) to subject the land to sale for plaintiffs' benefit, but which appellants knew, and proved to be false—that is to say, that they, appellants, bought with notice.

Parties come into courts of justice to meet matters contested, places where justice is judicially administered.

Ordinarily we would content ourselves as having performed duty by referring to the case of Hall & Jones v. Jackson, 3 Texas, 309, that proofs must be according to the allegations of the parties, and if the proofs go to matters not within the allegations the court cannot judicially act upon them as a ground of its decision, and cases therein referred to.

My excuse for referring to further authorities is the manifest and purposed disregard of it by the District Court in this case, in the charge given to the jury of his own accord in the decree, and in his refusal to correct the decree, or to grant a new trial.

This canon has governed in cases, 3 Texas, 309, 318; 6 Ib., 314; 9 Ib., 77; 1 Ib., 447; 2 Ib., 208, 551; 12 Ib., 330; 19 Ib., 410, 411; 7 Ib., 345; 28 Ib., 227.

In the American Chancery Digest, Vol. 1, we find on page 495: "No decree can be founded upon evidence in relation to matters not put in issue between the parties by the pleadings." (Tripp v. Vincient, 3 Barb. Ch. Rep., 613.) Page 497: "A decree must be sustained by the allegations of the parties as well as by the proofs in the cases, and cannot be founded on a fact not put in issue by the pleadings." (Corneal v. Banks, 10 Wheat., 181.) Page 498: "A decree must be not only *secundum probata*, but also *secundum allegata*." (Pratt v. Northam, 5 Mason, 113.) Page 507: "A decree must be founded on and in conformity to both the allegations and proofs." (Gregory v. Power, 3 Litt., 339.)

I cannot suppose that this court would look into further cases or elementary works, if into any of these, on this plain and fundamental rule for the government of parties and guides for courts.

Do the appellees stand in a position to ask this court to ignore this rule, or to send this case back for them to amend again?

They persisted in their charge that appellants bought with notice, actual notice.

Plaintiffs (below) are in a court of equity seeking equitable relief against appellants, who hold a perfect and completely executed legal title, clear, fair and full, emanating from the ancestor of appellees, from and under whom they (appellees) claim a secret hidden equity against appellants' honestly legal title of record.

But we hope successfully to maintain before this court that appellants are entitled to hold the land free of any supposed lien of plaintiffs, even if the case were stripped of all the rules and safeguards of pleadings and evidence.

His honor the district judge charged the jury, in substance, that if they found from the evidence that the only

consideration paid by appellants was Confederate money, they (appellants) could not hold the land against plaintiffs. The "Confederate money" part of the charge, covering two pages, when reduced to a legal point, means that if Cook received, and willingly too, Confederate money of the appellants for the land, then the jury would find against the appellants.

That the appellants objected and excepted to the charges, rulings, opinions and judgment of the District Court on the Confederate money question in this case, will be shown by the charges asked by them, and by their motions, and also by their first, second, third and fourth bills of exceptions, and their assignment of errors.

Let us see now if there is any decision of this court that is against appellants' right to hold this land free of the vendor's lien, or that puts the "highest court of Texas" in conflict with the adjudication of the Supreme Court of the United States in the case of Thorington v. Smith, 8 Wallace.

Thorington v. Smith was a case in equity, and the court did justice. The defendant had not a full legal title to the land; a defeasance was executed at the same time with the deed, and as a "part of the same transaction," and was a "lien and mortgage on said real estate." We have found no such or like case in the Texas Reports, consequently no conflict.

There may be expressions in the decisions of this honorable court not harmonizing with all the expressions of the court in Thorington v. Smith. The case now before the court is much stronger for appellants than was Thorington v. Smith for appellant or appellee.

First and foremost, this is a complete and fully executed contract, a deed of conveyance with general warrant, and entire payment in fact and on the face of the deed, without notice, and from a vendor having a perfect title

of record from plaintiffs' ancestor, whose note they sue to collect, and said plaintiffs are in equity on a secret lien concealed by the solemn act of said ancestor, and so remained for years.

I have examined all the Texas cases that are reported on the question of "Confederate money," and must content myself by referring to them, or most of them: Anderson v. Lewis, 31 Texas, 675; McCartney v. Greenway, Id., 754; Cleburg v. Bonds, Id., 611, 605, 604, 557, 443, 252, 201, 171; 30 Texas, 753, 754, 611; 32 Id., 43, 64, 183, 333, 397, 515, 670; 33 Id., 323, 346, 351, 395, 471, 479, 511, 629, 675, 783, 157, 622; 34 Id., 220, 327, 413, 516.

These establish, first, that where the consideration of a note or executory contract was "Confederate money," it was void and would not be enforced. Second, where a debt was payable in "Confederate money," on its face or in fact, it was void, etc. Third, where a good money debt had been paid in "Confederate money," and willingly received by the creditor, it could not be re-collected. Fourth, if not willingly received it could afterwards be collected, the leading or most satisfactory or principal case being Wood v. Willis, 32 Texas. Fifth, if paid to an executor, etc., though by him willingly received, it was no discharge of the debt.

The Texas cases clearly establish that executory contracts in and for "Confederate money" will not be enforced, nor executed ones disturbed.

Appellants hold under an executed contract, full, legal and of record, from one clothed by appellees' ancestor with full power, in due and solemn form of law, to alien the land in fee, free of encumbrance.

MacKreth v. Symmons (15 Vesey, Jr.), reviews many former English cases, and lays down the doctrine that the vendor's lien holds against the vendee, volunteers and purchasers with notice, or having equitable interests only,

claiming under him. Appellants come under neither of these heads. Their payment was made at the purchase, was adequate, was satisfactory, was valuable in the business sense of the term, fully executed, "and there is no reason to suppose that the contract was entered into for the purpose of giving currency to the Confederate notes, and thus aiding the rebellion," and "there was no illegal design." We respectfully maintain, in such a case as the case now before this court, a court of equity will not take from a defendant real estate to which he has a full legal title, for the benefit of a complainant, standing as these complainants (appellees) do.

Every man ought to pay his debts if he can, and should he give away his property, it is liable; but if, during 1861–5, he sold it for Confederate money paid down, is it liable? If an indebted man, during those times, collected what was due him, but in fact received it in Confederate money willingly, are those debtors of his liable in garnishment or equity to his creditors? We know of no such or like decision, here or elsewhere.

Are fair executed contracts to be ripped up by third persons because payments were made in Confederate money? We believe they will not be, because not consistent with the rules of law, or the principles of equity, or the peace and quiet of society.

*Baker & Maxey*, for appellees.—The appellants made motion to enter judgment for them, notwithstanding the verdict, and for new trial, both of which being overruled, they gave notice of appeal.

It is submitted as a principle that will not be questioned, that the vendor's lien for unpaid purchase money of land attaches to the land as against the vendee, his heirs and privies in estate (2 Washb. on Real Property, 88); and in general against all not clearly appearing to be

purchasers for value, who have actually paid the purchase money (Lead. Cas. in Equity, Vol. I, p. 277; High v. Battle, 10 Yerger, 335); and against volunteers, who pay nothing for their deed, and who therefore cannot set up the want of notice (2 Washb. on Real Property, p. 89; 2 Story Eq., § 1225; Burlingame v. Robbins, 21 Barb., 327; Upshaw v. Hargrove, 6 S. & M., 286; MacKreth v. Symmons, 15 Vesey, 329); and against those that purchase without notice at the time, but acquire notice before paying the purchase money. (Ripperdon v. Cozine, 8 B. Mon., 465.)

Applying these principles to the facts of this case, it is manifest that as between the vendor of Cook and appellants, the latter were only volunteers; they paid in law nothing for their deed, and therefore took the land subject to appellees' equity, just as Cook held it. Volunteers without notice, having paid none of the consideration, occupy the same relation to equities against their vendor, as do purchasers for value with notice. Their position is more analogous to that of one who takes an estate by succession, or to an assignee of an insolvent.

Burlingame v. Robbins, 21 Barb., 327, was a suit by the vendor to enforce his equitable lien against the land in the hands of sub-vendee. The referee found as facts that at the time the sub-vendee took the conveyance he had no notice of the plaintiff's demand, but he paid no consideration for the deed; the court held that although the law protects from the lien of the vendor one who purchases in good faith for a valuable consideration, and without notice, it will not protect a mere volunteer who has not paid anything. The only material distinction between Burlingame's case and the one under consideration is, that in the former the sub-vendee paid nothing, while in the latter he paid Confederate money. Actual payment of a valuable consideration is an indispensable ele-

ment in the constitution of what courts of equity deem a purchaser for value without notice. (Frame v. Frederick, 32 Texas, 308.)

In this case the proof shows that appellants paid only Confederate money. As between them and their vendor, the contract being executed, the courts would not interfere with their title, although the consideration was illegal. But as between them and the creditors of their vendor, holding a lien on the land for unpaid purchase money, appellants have paid nothing. Confederate money being the consideration on which appellants received their deed from Cook, it was illegal, and therefore of no value ; being of no value, they have paid nothing on the land as against the lien of Cook's vendor. They are volunteers as to said lien, and in relation to it hold the land precisely as Cook did. Hence, the want of notice cannot avail them—they cannot set it up. (2 Washburn, *supra*.)

It is not insisted that the burden was on appellants to show that they had purchased for value and without notice. Holding, as they did, the legal title, fair on its face, in seeking to enforce their lien against appellants, as purchasers, the burden was on appellees to show one of two things : either that appellants had notice of their lien, or that they had not paid a valuable consideration. (McAlpin v. Burnett, 23 Texas, 649.) The latter, it is submitted, was abundantly shown by the testimony of one of the appellants. (Massie & Goble v. Rice *et al.*, from Harris county, decided May 6, 1872.)

Appellees' petition alleged that appellants purchased of Cook with notice of their lien ; but it is insisted by appellants that because it was not alleged that the latter paid no valuable consideration, or in fact paid Confederate money, for their deed, therefore appellees should not have been allowed to prove this fact, and having proved it, cannot avail themselves of it in their pleadings.

If it be true that a volunteer who pays nothing for his deed cannot set up the want of notice, as stated in 2 Washburn, *supra*, then it follows that proving appellants to be volunteers, places them in the same condition as if they had notice of appellees' lien.

The only reason for making such an allegation would be to give appellants notice, so that they might come to trial prepared with their proof to meet it, and thus prevent surprise. But in this case the reason of the rule ceases, because the testimony on this point came from one of appellants, when he made himself a witness to sustain his own plea; it came out upon cross-examination by appellees, without objection on the part of appellants, either to the question or the answer; it came from a party to the suit, and the identical one that made the purchase of Cook and paid the Confederate money, and so far as the proof shows was perhaps the only person that knew the fact except Cook, who was a nonresident. He therefore could not be surprised at his own answer to the cross-interrogatory of appellees, which brought out this fact in evidence; and as it was a truth which he was compelled to admit, and known only to him, appellants could in nowise have been benefitted by an allegation of the fact.

It is therefore insisted that there was no error in the charge of the court below, the finding of the jury, or the judgment of the court, for which this cause should be reversed. But if, in the judgment of this court, appellees' petition was defective in the particular alluded to, for which the cause should be reversed, then it is asked that it may be remanded, that the proper amendment may be made, and for new trial.

WALKER, J.—This suit was brought against one Cook for a balance of the purchase money, and to enforce a vendor's lien on the land in cotroversy.

The appellants claimed to be innocent purchasers for a valuable consideration without notice. The jury found that they were purchasers without notice, but that the whole of the consideration paid was Confederate money. On this verdict the court entered judgment and decree for the appellees.

We have never held that Confederate money was a good or valid consideration to support a contract. We have refused to disturb executed contracts, or to enforce executory contracts; but here the appellants, in order to make out their title to the land, must show that they paid a good consideration. This they have not done. The judgment of the District Court is correct, and is affirmed.

AFFIRMED.